**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3422
_____

UNITED STATES OF AMERICA

v.

VERNEL AUBREY WILLIAMS,
Appellant
_____

On Appeal from the District Court of the Virgin Islands
(D.C. No. 3-14-cr-00035-001)
District Judge: Hon. Curtis V. Gomez
_____

Argued: December 11, 2018

Before: CHAGARES, HARDIMAN, and RESTREPO,
*Circuit Judges*

(Filed: March 5, 2019)
_____

Omodare B. Jupiter          [ARGUED]
Office of Federal Public Defender
4094 Diamond Ruby, Suite 5
Christiansted, VI 00820

Kia D. Sears
Office of Federal Public Defender
1336 Beltjen Road
Suite 202, Tunick Building
St. Thomas, VI 00802
          *Counsel for Appellant*

Everard E. Potter, I       [ARGUED]
Gretchen C.F. Shappert
Office of United States Attorney
5500 Veterans Drive, Suite 260
United States Courthouse
St. Thomas, VI 00802
     *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

**RESTREPO**, *Circuit Judge*.

Vernel Aubrey Williams appeals his judgment of conviction and the sentence imposed by the District Court, contending that his rights under the Speedy Trial Act of 1974, 18 U.S.C. §§ 3161–3174, were violated. Williams argues that the District Court erred in denying his motions to dismiss the Indictment, in which he asserted that time had elapsed in excess of the seventy-day period during which the Speedy Trial Act requires the Government to commence a trial of a defendant, and Williams petitions the Court to dismiss the Indictment with prejudice. For the reasons that follow, we hold that Williams's rights under the Speedy Trial Act were violated, and we will reverse the order of the District Court denying Williams's motions to dismiss the Indictment, vacate the judgment of conviction and sentence imposed, and remand to the District Court with the direction to dismiss the Indictment with prejudice.

**I.**

On January 28, 2014, the Government charged Williams, in a five-count Information, with (a) possessing a firearm within 1,000 feet of a school zone, in violation of 18 U.S.C. §§ 922(q)(2)(A) and 924(a)(4); (b) discharging a firearm within 1,000 feet of a school zone, in violation of 18 U.S.C. §§ 922(q)(3)(A) and 924(a)(4); (c) discharging a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A); (d) assault with a deadly weapon, in violation of V.I. Code tit. 14, § 295(2); and (e)

possessing, transporting, and carrying a firearm during the commission of a crime of violence, in violation of V.I. Code tit. 14, § 2253(a). The charges contained in the Information arose from Williams's conduct on December 24, 2013, when the Government alleges that Williams shot a store owner on St. Thomas, U.S. Virgin Islands, during an altercation that began inside the store owner's place of business and ended outside of a nearby elementary and high school.

Nearly a month after the Government's filing the Information, but before Williams had been arraigned, Williams's counsel filed a motion for a hearing to determine Williams's mental competency pursuant to 18 U.S.C. § 4241(a). Thereafter, the District Court granted Williams's motion, ordering Williams to undergo a psychological examination. Williams refused to participate in the court-ordered psychological examination, however, and thus the District Court neither received a formal report nor held a hearing with respect to Williams's competency. As a result, the Government filed its own motion for a hearing to determine Williams's competency, which the District Court granted on June 11, 2014. The District Court ordered that Williams be transported to the Federal Medical Center in Butner, North Carolina ("FMC Butner"), to undergo a psychological examination.

The following day—June 12, 2014—a grand jury returned a five-count Indictment, charging Williams with (a) discharging a firearm within 1,000 feet of a school zone, in violation of 18 U.S.C. §§ 922(q)(3)(A) and 924(a)(4); (b) possessing a firearm within 1,000 feet of a school zone, in violation of 18 U.S.C. §§ 922(q)(2)(A) and 924(a)(4); (c) possessing, on a separate occasion, a firearm within 1,000 feet of a school zone, in violation of 18 U.S.C. §§ 922(q)(2)(A) and 924(a)(4); (d) assault with a deadly weapon, in violation of V.I. Code tit. 14, § 297(2); and (e) possessing, transporting, and carrying a firearm during the commission of a crime of violence, in violation of V.I. Code tit. 14, § 2253(a). Four of the counts arose from the same conduct that was the subject of the charges contained in the Information; the second count for possessing a firearm within 1,000 feet of a school zone arose from Williams's arrest on December 29, 2013. On June 18,

3

2014, Williams was arraigned with respect to the charges contained in the Indictment.

Pursuant to the District Court's order dated June 11, 2014, Williams was transported to FMC Butner to undergo a psychological examination, but Williams did not arrive at FMC Butner until July 29, 2014. Following an examination of Williams, on October 31, 2014, a forensic psychologist submitted a formal report to the District Court with respect to Williams's competency. On November 5, 2014, the District Court held a hearing, pursuant to 18 U.S.C. § 4241, to determine Williams's mental competency. The District Court determined that Williams lacked the mental competency to stand trial and, on November 6, 2014, entered an order committing Williams to the custody of the United States Attorney General pursuant to 18 U.S.C. § 4241(d).

During the period of Williams's incompetency, the Government filed a motion to involuntarily medicate Williams, in an attempt to restore his competency. On October 9, 2015, the District Court held an evidentiary hearing on the Government's motion. During a recess, a physician employed by FMC Butner—who previously recommended that Williams be involuntarily medicated—conducted an examination of Williams, after which the physician testified that Williams indeed was *competent* to stand trial. Following the testimony of the physician, the Government withdrew its motion, and the District Court indicated that it promptly would set a date for Williams's trial.

The District Court did not set a trial date, however, and neither the Government nor Williams filed any pleadings in the case for nearly two months following the evidentiary hearing on October 9, 2015. On December 2, 2015, the Government ended the fifty-three-day lapse in activity by filing a motion in limine (the "Motion in Limine") to "exclude evidence, argument, or questioning regarding [Williams's] mental health or competency." App. 87.

Rather than filing a brief in opposition to the Government's Motion in Limine, on December 18, 2015, Williams filed a motion to dismiss the Indictment (the "First Motion to Dismiss"), asserting that his rights under the Speedy

4

Trial Act had been violated. The Government filed a brief in opposition to Williams's First Motion to Dismiss on December 31, 2015, and the District Court held an evidentiary hearing with respect to Williams's First Motion to Dismiss on February 25, 2016. At the conclusion of the evidentiary hearing, the District Court ordered the Government and Williams to submit supplemental briefing on certain issues raised during the hearing, which the parties submitted on March 10, 2016. The District Court then ordered the Government to reply to the arguments raised by Williams in his supplemental brief. The Government, with the District Court's permission, filed an out-of-time reply on March 31, 2016.

Following the Government's submission on March 31, 2016, approximately three-and-a-half months elapsed, during which neither party filed pleadings and during which the District Court took no further action with respect to Williams's First Motion to Dismiss. Then, on July 15, 2016, Williams filed a second motion to dismiss the Indictment (the "Second Motion to Dismiss" and, together with the First Motion to Dismiss, the "Motions to Dismiss"), reiterating and supplementing his arguments that his rights under the Speedy Trial Act had been violated. After nearly three months of inaction on the parts of the Government and the District Court with respect to his Second Motion to Dismiss, Williams filed a writ of mandamus in this Court to compel the District Court to rule on the still-pending Motions to Dismiss.

In response to Williams's filing his writ of mandamus, and prior to this Court's consideration of Williams's writ of mandamus, the District Court took a number of actions. On October 24, 2016, the District Court set a trial date for the matter and ordered Williams to submit a reply brief with respect to the Government's Motion in Limine, which had been pending since December 2, 2015. Two days later, on October 26, 2016, the District Court, in an order that did not include

5

written reasons,[1] denied Williams's Second Motion to Dismiss and denied Williams's First Motion to Dismiss as moot.

Pursuant to a plea agreement with the Government, Williams subsequently pleaded guilty to one count of possessing a firearm within 1,000 feet of a school zone, in violation of 18 U.S.C. §§ 922(q)(3)(A) and 924(a)(4), but explicitly "reserve[d] the right to appeal [any potential] speedy trial violation." App. 242. The District Court sentenced Williams to a term of "time served" and a one-year period of supervised release. This appeal followed.

## II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We exercise plenary review over a district court's interpretation and application of the provisions of the Speedy Trial Act, including those related to excludable time. *United States v. Hamilton*, 46 F.3d 271, 273 (3d Cir. 1995).

## III.

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. Congress enacted the Speedy Trial Act to give effect to this constitutional guarantee "by setting specified time limits . . . within which criminal trials must be commenced." *United States v. Rivera Constr. Co.*, 863 F.2d 293, 295 (3d Cir. 1988). Pursuant to the Speedy Trial Act, "the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). Thus, under the Speedy Trial Act, a seventy-day "clock" begins to

---

[1] The District Court's three-page order quoted relevant statutory and constitutional provisions but provided no analytical support for its ruling other than a brief statement that "[t]he premises [had been] considered."

run upon the latest of (x) the filing of an information, (y) the filing of an indictment, or (z) a defendant's appearance, and the Government must commence a trial of the defendant prior to the expiration of the seventy-day clock.[2]

The Speedy Trial Act provides that certain periods of time are "excludable" for purposes of calculating the time within which the Government must commence a trial of a defendant. *See id.* § 3161(h). In other words, certain events or occurrences "stop" the seventy-day speedy trial clock. Most relevant to this appeal,[3] the Speedy Trial Act provides that the following periods of time are excludable:

---

[2] The Speedy Trial Act also imposes a separate, thirty-day clock that begins to run upon the arrest of the defendant or the service of a summons, during which the Government must file an information or indictment charging the defendant with an offense. *See* 18 U.S.C. § 3161(b). In his brief, Williams argued that his rights under the Speedy Trial Act also had been violated with respect to the thirty-day clock. Because we hold that Williams's rights under the Speedy Trial Act were violated with respect to the seventy-day clock, it is unnecessary to discuss the separate, thirty-day clock.

[3] Williams argues that additional non-excludable time elapsed while the Government's Motion in Limine was pending. Because we hold that non-excludable time elapsed in excess of the seventy-day period within which the Government must have commenced a trial of Williams—namely, during the period between October 9, 2015, and December 2, 2015, and during all but ten days of the period between the District Court's order directing Williams to be transported to FMC Butner and his arrival there—we need not, and do not, reach the issues related to the Government's Motion in Limine, including whether the Motion in Limine is a "pretrial motion" that stops the seventy-day clock pursuant to 18 U.S.C. § 3161(h)(1)(D) or whether the Motion in Limine was "under advisement" by the District Court pursuant to 18 U.S.C. § 3161(h)(1)(H).

- "delay resulting from any proceeding, including any examinations, to determine the mental competency . . . of the defendant," *id.* § 3161(h)(1)(A); and

- "delay resulting from transportation of any defendant . . . to and from places of examination . . . , except that any time consumed in excess of ten days from the date an order . . . directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable," *id.* § 3161(h)(1)(F).

The Government concedes that fifty-three days—the period between the evidentiary hearing on October 9, 2015, and the Government's filing its Motion in Limine on December 2, 2015—elapsed from the seventy-day speedy trial clock. The controversy in this appeal centers on whether, or to what extent, the time between June 11, 2014—when the District Court ordered that Williams be transported to FMC Butner to undergo a psychological examination—and July 29, 2014—when Williams arrived at FMC Butner—is excludable for purposes of the seventy-day speedy trial clock.[4]

This appeal requires us to address, for the first time, the interplay between 18 U.S.C. § 3161(h)(1)(A)—which excludes periods of delay relating to proceedings to determine a defendant's mental competency—and 18 U.S.C. §

---

[4] Although this case presents issues with respect to the determination of the date on which the seventy-day speedy trial clock began to run, it is unnecessary to address these issues because all non-excludable time in this case occurred after June 18, 2014—the date of Williams's first appearance with respect to the charges contained in the Indictment—which is the *latest* date on which the seventy-day clock could have begun to run pursuant to 18 U.S.C. § 3161(c)(1).

8

3161(h)(1)(F)—which excludes certain periods of delay in connection with, among other things, transportation of a defendant to a psychological examination. In *United States v. Graves*, 722 F.3d 544, 548 (3d Cir. 2013), we held that "the period of excludable delay under § 3161(h)(1)(A) begins when a party moves for, or the court *sua sponte* orders, a competency determination" and "continues at least until a competency hearing is held." In *Graves*, however, we did not resolve whether an unreasonable period of delay in transporting a defendant to a psychological examination is non-excludable when that period takes place within the confines of a "proceeding" to determine the defendant's mental competency, which period would otherwise be excludable pursuant to section 3161(h)(1)(A). *See id.* at 548 n.6 ("We also need not, and do not, resolve the issue of whether an unreasonable delay in the transportation of a defendant to a competency examination is excludable. That issue has arisen in other cases due to § 3161(h)(1)(F). . . . [W]e do not reach the question of what impact it may have on delays for competency proceedings under § 3161(h)(1)(A)." (citation omitted)). Put differently, this appeal requires us to determine whether section 3161(h)(1)(F) places a limitation on the amount of time that can be excluded pursuant to section 3161(h)(1)(A) for a competency determination.

Several of our sister circuits have considered this question. The United States Court of Appeals for the Second Circuit has held that *any* period of delay relating to a proceeding to determine a defendant's mental competency is excludable pursuant to section 3161(h)(1)(A), regardless of whether the delay is unreasonable or related to the transport of the defendant to the site of a psychological examination. *See United States v. Vasquez*, 918 F.2d 329, 333 (2d Cir. 1990). The Second Circuit reasoned that, in its view, the United States Supreme Court's holding in *Henderson v. United States*, 476 U.S. 321, 330 (1986), prohibits courts from considering the reasonableness of a delay if the relevant subsection of section 3161(h) does not contain an explicit "reasonableness" qualifier. *Vasquez*, 918 F.2d at 333. Thus, the Second Circuit held that *all* time between the filing of a motion for a competency determination and a hearing on such motion is excludable because the text of section 3161(h)(1)(A) does not

9

contain any language limiting the applicability of the exclusion to only reasonable periods of delay. *See id.*

The United States Courts of Appeals for the First, Fifth, and Sixth Circuits, however, have taken a contrary position. Each of those courts has held that "a delay in transporting a defendant to a mental competency examination beyond the ten[-]day limit imposed by § 3161(h)(1)(F) is presumptively unreasonable, and in the absence of rebutting evidence to explain the additional delay, this extra time is not excludable." *United States v. Tinklenberg*, 579 F.3d 589, 596 (6th Cir. 2009), *aff'd on other grounds*, 563 U.S. 647 (2011); *accord United States v. Noone*, 913 F.2d 20, 25–26 (1st Cir. 1990); *United States v. Castle*, 906 F.2d 134, 137 (5th Cir. 1990). The First, Fifth, and Sixth Circuits reasoned that reading section 3161(h)(1)(A) to permit the exclusion of an unlimited amount of time for the transport of a defendant to the site of a psychological examination would render section 3161(h)(1)(F) superfluous because the latter subsection specifically states that delays of more than ten days in transporting defendants to the sites of psychological examinations are presumed to be unreasonable. *See Tinklenberg*, 579 F.3d at 596 ("The only way to avoid conflict between § 3161(h)(1)(A) and § 3161(h)(1)(F) is to read § 3161(h)(1)(F) as a specific exception to the general rule announced in § 3161(h)(1)(A): *i.e.*, all delays caused by proceedings to determine a defendant's competency are excluded, except for the time during which the defendant is supposed to be in transit, which is presumptively unreasonable if longer than ten days.").

We agree with the First, Fifth, and Sixth Circuits, and we hold that periods of unreasonable delay of more than ten days in the transport of a defendant to the site of a psychological examination conducted in the course of a proceeding to determine a defendant's mental competency are non-excludable for purposes of computing the time within which the Government must commence a trial of a defendant under the Speedy Trial Act. A cardinal rule of statutory interpretation is that courts should avoid interpreting a statute in ways that would render certain language superfluous. *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no

clause, sentence, or word shall be superfluous, void, or insignificant." (internal quotation marks omitted) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001))); *see also Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 539 F.3d 199, 210 (3d Cir. 2008) ("We assume, for example, that every word in a statute has meaning and avoid interpreting one part of a statute in a manner that renders another part superfluous."). While we have held that "the period of excludable delay under § 3161(h)(1)(A) begins when a party moves for, or the court *sua sponte* orders, a competency determination" and "continues at least until a competency hearing is held," *Graves*, 722 F.3d at 548, interpreting section 3161(h)(1)(A) to exclude any and all periods of delay in transporting a defendant to the site of a psychological examination—regardless of whether such delay is in excess of ten days and otherwise unreasonable—would read section 3161(h)(1)(F) out of the statute. Put simply, both section 3161(h)(1)(A) and section 3161(h)(1)(F) specifically relate to the same "examinations": section 3161(h)(1)(A) excludes periods of delay with respect to examinations,[5] and section 3161(h)(1)(F) excludes periods of delay in transporting a defendant to the site of such examinations and explicitly places a potential limitation on the amount of time that may be excludable for such transport delays.[6] Psychological examinations that necessitate the transport of defendants from their places of detention typically occur in the context of the competency determinations that are the subject of section

---

[5] Section 3161(h)(1)(A) excludes periods of "delay resulting from any proceeding, including any *examinations*, to determine the mental competency . . . of the defendant." 18 U.S.C. § 3161(h)(1)(A) (emphasis added).

[6] Section 3161(h)(1)(F) applies to periods of "delay resulting from transportation of any defendant . . . *to and from places of examination*" and automatically excludes a period of up to ten days for a defendant's transport to the site of a psychological examination; "any time consumed in excess of ten days from the date an order . . . directing such transportation" to the site of a psychological examination "and the defendant's arrival at the destination shall be presumed to be unreasonable." *Id.* § 3161(h)(1)(F) (emphasis added).

3161(h)(1)(A)—a defendant would not be transported out of his detention facility for a psychological examination in the absence of such a court-ordered competency determination. Therefore, section 3161(h)(1)(A) cannot be interpreted to exclude *all* periods of delay related to examinations because section 3161(h)(1)(F) places a specific limitation on the excludability of an unreasonable period of delay in transporting a defendant to the site of that *very* examination. To interpret section 3161(h)(1)(A) in such a way would render section 3161(h)(1)(F) superfluous because it would *never* be necessary to apply section 3161(h)(1)(F) to determine if a period of delay in transporting a defendant to a psychological examination is unreasonable and, therefore, non-excludable; section 3161(h)(1)(A) would *always* exclude such period of delay, and the limitations contained in section 3161(h)(1)(F) would be devoid of meaning.

This interpretation finds support in *Henderson*, in which the Supreme Court counseled parties to read the exclusions contained in section 3161(h)(1) "in connection with" each other. 476 U.S. at 328. In *Henderson*, the Supreme Court held that "prompt disposition" of a motion—as referred to in the predecessor to section 3161(h)(1)(D)—must be interpreted with reference to the thirty-day limitation contained in the predecessor to section 3161(h)(1)(H), such that "prompt disposition" must be interpreted to mean disposition of a motion within thirty days of that motion's being "under advisement" by a court. *Id.* at 329. Thus, in *Henderson*, the Supreme Court held that a period of delay that is excludable under one subsection of section 3161(h)(1) may be limited by specific language contained in a wholly separate subsection of section 3161(h)(1).

In reaching our holding, we simply have used the same interpretive approach that the Supreme Court used in *Henderson*. We hold that the period of delay that is excludable under section 3161(h)(1)(A) for proceedings to determine the mental competency of a defendant, including examinations, is limited by the specific language of section 3161(h)(1)(F), which explicitly states that a period of delay in transporting a defendant to the site of an examination in excess of ten days is presumptively unreasonable. Therefore, we hold that the period of delay between a party's filing a motion for a

12

competency determination and a court's disposition of that motion is excludable, except that only ten days for transport of the defendant to the site of a psychological examination are automatically excludable; any period of transport delay in excess of ten days is presumptively unreasonable and, consequently, presumptively non-excludable.[7]

## IV.

We now must determine the extent to which the period of delay in transporting Williams to FMC Butner in 2014 is excludable for purposes of the seventy-day speedy trial clock. The District Court entered its order directing that Williams be transported to FMC Butner for a psychological examination on June 11, 2014. Pursuant to section 3161(h)(1)(F), the period through June 21, 2014—ten days from the District Court's order directing Williams's transport—is automatically excludable. *See* 18 U.S.C. § 3161(h)(1)(F). The thirty-seven-day period between June 21, 2014, and July 29, 2014—when Williams arrived at FMC Butner—is presumptively unreasonable and, therefore, presumptively non-excludable. *See id.*

The Government has not overcome the presumption that such thirty-seven-day period is non-excludable. The District Court held an evidentiary hearing with respect to the reasons

---

[7] Our holding is limited to the impact of section 3161(h)(1)(F) on section 3161(h)(1)(A) in particular. We need not, and do not, opine on the interplay between section 3161(h)(1)(F) and other subsections of section 3161(h), including section 3161(h)(4), which excludes periods of delay resulting from the fact that the defendant is actually mentally incompetent. One of our sister circuits recently has addressed this issue, holding that any period of delay following a court's determination that a defendant is mentally incompetent is excludable under section 3161(h)(4) and that section 3161(h)(1)(F) does not limit the excludability of such period of delay whatsoever. *See United States v. Romero*, 833 F.3d 1151 (9th Cir. 2016). This holding of our sister circuit provides further support for the proposition that if section 3161(h)(1)(F) is to have *any* meaning, that subsection must relate to section 3161(h)(1)(A) and act as a limitation thereon.

for the delay in transporting Williams to FMC Butner, and thus the record is well developed in this regard. At the evidentiary hearing, which was held on February 25, 2016, the District Court heard testimony from the representative of the United States Marshals Service who was responsible for making Williams's transport arrangements. The only explanation for the delay that was offered by the representative of the Marshals Service is that the Marshals Service did not receive the District Court's order directing Williams's transport until July 9, 2014. The automatic ten-day transport delay exclusion under section 3161(h)(1)(F), however, begins on "the date of an *order . . .* directing such transportation"; the ten-day period does not begin on the date that the Marshals Service receives actual notice of such an order. 18 U.S.C. § 3161(h)(1)(F) (emphasis added). Thus, delay—beyond ten days—in transporting a defendant that is attributable only to negligence on the part of the Government or a district court in relaying to the Marshals Service the order directing the defendant's transport is patently unreasonable and non-excludable. To hold otherwise would require us to ignore the text of section 3161(h)(1)(F)—which places the sole focus of the inquiry on the date of a court's order—and would require us to impose a notice requirement that the statute otherwise does not contain.

Therefore, the thirty-seven days that elapsed between June 21, 2014, and July 29, 2014, are non-excludable because the Government has not overcome the presumption that this period of delay in transporting Williams to FMC Butner is unreasonable. Given that the Government concedes that a separate, fifty-three-day period of non-excludable delay elapsed between October 9, 2015, and December 2, 2015, a total of ninety days of non-excludable time had elapsed prior to the commencement of a trial of Williams, in violation of the seventy-day clock imposed by the Speedy Trial Act pursuant to section 3161(c)(1). Therefore, Williams's rights under the Speedy Trial Act were violated, and the District Court erred in denying his Motions to Dismiss.

## V.

If the Government does not commence a trial of a defendant before the seventy-day speedy trial clock expires, "the information or indictment shall be dismissed."

*Id.* § 3162(a)(2). Dismissal of an information or indictment is mandatory, rather than discretionary, upon a violation of the Speedy Trial Act. *See United States v. Carrasquillo*, 667 F.2d 382, 390 (3d Cir. 1981) ("Under section 3162(a)(2) as amended, dismissal of the indictment is mandatory."). Section 3162(a)(2) sets forth factors that courts should consider when determining whether to dismiss an information or indictment with or without prejudice for a violation of the Speedy Trial Act, including "the seriousness of the offense[,] the facts and circumstances of the case which led to the dismissal[,] and the impact of a reprosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(2).

Under most circumstances, a district court should determine, in the first instance, whether an information or indictment should be dismissed with or without prejudice. *See, e.g.*, *Zedner v. United States*, 547 U.S. 489, 509 (2006) ("The sanction for a violation of the [Speedy Trial] Act is dismissal, but we leave it to the District Court to determine in the first instance whether dismissal should be with or without prejudice."); *Carrasquillo*, 667 F.2d at 390 (remanding to the district court "with directions that the court dismiss the indictment with or without prejudice, according to its findings under section 3162(a)(2)").

Our sister circuits are in agreement, however, that "[w]hile the decision is generally the trial court's in the first instance, remand for a hearing is not required if the answer is so clear that no purpose would be served by a remand." *Tinklenberg*, 579 F.3d at 600 (alteration in original) (quoting *United States v. Robinson*, 389 F.3d 582, 588 (6th Cir. 2004)); *accord United States v. Jones*, 601 F.3d 1247, 1257 (11th Cir. 2010) ("When the result of th[e] balancing test [under section 3162(a)(2)] is so clear that remand constitutes an unnecessary expenditure of judicial resources, a court of appeals ought to engage the § 3162(a)(2) factors rather than remand on the issue of prejudice."); *United States v. Mora*, 135 F.3d 1351, 1358 (10th Cir. 1998) ("The decision whether to dismiss with or without prejudice usually belongs to the district court in the first instance, unless the answer is so clear that remand is unnecessary."); *United States v. Janik*, 723 F.2d 537, 546 (7th Cir. 1983) ("[T]he district court therefore . . . should make the determination [regarding prejudice] unless the answer is so

clear that no purpose would be served by a remand to the district court."). The Sixth Circuit, in *Tinklenberg*, 579 F.3d at 600–01, held that remand was unnecessary in that case because the defendant had served his full sentence, as well as his sentence for violating the terms of his supervised release. The Sixth Circuit reasoned that even though the defendant's crimes were serious in nature and that there was no showing of bad faith on the part of the Government, "no purpose would be served by retrying [the defendant] for the offenses for which he has already been punished in full, [and] there is no reason to require the district court to hold a hearing on the issue." *Id.* at 601.

Here, we are presented with the same issue as in *Tinklenberg*. The District Court sentenced Williams, who had been detained for over three-and-a-half years, to "time served." It also appears from the record that Williams has completed his one-year term of supervised release without violating its terms. Thus, Williams has served the entirety of his sentence, and no purpose would be served by retrying Williams for the offenses contained in the Indictment. *See id.* It is clear that dismissal without prejudice in this case would be contrary to the administration of justice because Williams already has been punished in full, and we therefore will remand to the District Court with the direction to dismiss the Indictment with prejudice.

## VI.

For the foregoing reasons, we will reverse the District Court's denial of Williams's Motions to Dismiss, vacate the judgment of conviction and sentence imposed, and remand to the District Court with the direction to dismiss the Indictment with prejudice.